IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VERNON SUZUKI, | ) | CIVIL NO. 13-00575 JMS/KJM |
| | ) | |
| Plaintiff, | ) | ORDER: (1) AFFIRMING THE |
| | ) | APRIL 28 ORDER, DOC. NO. 69; |
| vs. | ) | (2) GRANTING IN PART AND |
| | ) | DENYING IN PART |
| HELICOPTER CONSULTANTS OF | ) | DEFENDANT'S MOTION TO |
| MAUI, INC., D/B/A BLUE | ) | STRIKE, DOC. NO. 80; AND |
| HAWAIIAN HELICOPTERS | ) | (3) DENYING DEFENDANT'S |
| | ) | MOTION TO EXTEND THE |
| | ) | DISPOSITIVE MOTIONS |
| Defendant. | ) | DEADLINE, DOC. NO. 115 |
| | ) | |

**ORDER: (1) AFFIRMING THE APRIL 28 ORDER, DOC. NO. 69; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE, DOC. NO. 80; AND (3) DENYING DEFENDANT'S MOTION TO EXTEND THE DISPOSITIVE MOTIONS DEADLINE, DOC. NO. 115**

## I. INTRODUCTION

There are three motions before the court: (1) Plaintiff Vernon

Suzuki's ("Plaintiff") "Objections to Magistrate's Order Dated April 28, 2016"

("Plaintiff's Appeal"), which appeals Magistrate Judge Barry M. Kurren's April

28, 2016 "Order Denying Plaintiff's Motion for Leave to Amend and Motion for

Leave to Extend Deadline for Disclosure of Expert Reports Or, In the Alternative,

To Reset Trial And Pretrial Deadlines" (the "April 28 Order"), Doc. No. 81;

(2) Defendant Helicopter Consultants of Maui, Inc. d/b/a Blue Hawaiian

Helicopters' ("Defendant") Motion to Strike and Preclude Testimony of Plaintiff's

Expert Witnesses ("Motion to Strike"), Doc. No. 109; and (3) Defendant's Motion

to Extend Dispositive Motions Deadline for Purpose of Filing a Motion for

Summary Judgment ("Defendant's Motion to Extend Dispositive Motions

Deadline"), Doc. No. 115.  Based on the following, the court:  (1) AFFIRMS the

April 28 Order; (2) GRANTS in part and DENIES in part Defendant's Motion to

Strike; and (3) DENIES Defendant's Motion to Extend Dispositive Motions

Deadline.

## II.  <u>BACKGROUND</u>

Plaintiff alleges that, on November 10, 2011, one of Defendant's

helicopters crashed on undeveloped land on Molokai.  Doc. No. 1, Compl. ¶¶ 9-

10.  According to a May 2013 National Transportation Safety Board ("NTSB")

Report, the debris path from the crash was approximately 1,330 feet long,

extending west-northwest from the main wreckage.  *Id.* ¶ 23.  The site of the crash

occurred on TMK: (2) 5-6-006:012 ("Parcel 12"), but debris from the crash

extended to TMK: (2) 5-6-006:013 ("Parcel 13").  *See* Doc. No. 47-3, Proposed

Am. Compl.

On October 30, 2013, Plaintiff filed this lawsuit seeking damages the

crash caused to "Plaintiff's Land."  Doc. No. 1, Compl.¶ 10.  The Complaint

asserted seven causes of action:  "Negligence - Res Ipsa Loquitur" (Count I), "Negligence" (Count II), "Gross Negligence" (Count III), "Trespass/Continuing Trespass" (Count IV), Nuisance/Continuing Nuisance (Count V), "Negligent Hiring, Training, Retention, and/or Supervision" (Count VI), and "Willfull [sic] and Wanton Conduct/Reckless Disregard" (Count VII).  *Id.*  Plaintiff requested both injunctive relief and damages.  *Id.*

In the very early stages of the discovery process -- *i.e.*, less than three months after Plaintiff filed this case -- Defendants raised the issue that the crash site was on Parcel 12 (not Parcel 13) and that Plaintiff may not actually own Parcel 12.  Defendant's March 18, 2014 letter to Plaintiff's lawyer explains:

> During our January 21, 2014 Discovery Planning Conference, you stated that you would confirm that [Plaintiff] owns the land upon which the November 10, accident occurred.  To date, no such proof has been offered.

> During a telephone conversation we had on March 6, 2014, you asked if we could explain our basis for questioning whether the November 10, 2011 accident occurred on [Plaintiff's] land.  In the spirit of cooperation, we prepared a series of images that show the position of the November 10, 2011 accident site (as publically-reported by the NTSB in 2013) in relation to the boundary of [Parcel 13] property on Molokai (as defined by public record hosted by the County of Maui Real Property Tax Division).  These images were generated using Google Earth . . . .

3

According to the NTSB, the accident site is located at N°21 04.050' by W156° 50.578' (as reported at p. 3 of the NTSB Immersive Witness Interview Report). To determine where this accident site was located in relation to [Plaintiff's] property, we used Google Earth to plot these coordinates in relation to a map of [Plaintiff's] property that we downloaded from the County of Maui Real Property Tax Division website[]. The resulting map suggests that the November 10, 2011 accident site is located approximately 25 feet west northwest of the west-most boundary of [Plaintiff's] property . . . .

Furthermore, the NTSB reported that the wreckage debris path "extended west northwest from the main wreckage" site. (see p. 6 of the NTSB Operations/Witness -- Factual Report of Group Chairman, which you appear to have quoted at paragraph 23 of your Complaint) . . . .

Based on this information, it appears that neither the accident site nor the debris field are located on land owned by [Plaintiff].

Doc. No. 102-3, Letter to Plaintiff's Counsel at 1, 8. Defendant's letter also provided Plaintiff with a map, *id.* at 2-7, and the publicly-available links to the internet resources referenced in the letter. *Id.* at 8.

On December 3, 2014, Defendant served Plaintiff with its "First Request for Production of Documents and Things." Doc. No. 115-6. Among other things, Defendant requested "[d]ocuments relating to Plaintiff's past, current, or prospective ownership" of Parcel 12 and Parcel 13. *Id.* at 10. Plaintiff failed to

4

produce documents evidencing ownership of Parcel 12.  Doc. No. 115-1, Def.'s

Motion to Extend Dispositive Motions Deadline at 4.  Accordingly, during

Plaintiff's first deposition on February 5, 2015, Defendant "reiterated its request

for these documents." *Id.*  In response, Plaintiff's counsel agreed that "it's

obvious that there will be supplementation of discovery of production of

documents" and offered to allow Defendant the opportunity to take a further

deposition of Plaintiff upon the production of such documents.  *See* Doc. No. 115-

7, Ex. E (Feb. 5, 2015 Suzuki Dep.).

        In "Spring 2015" -- *i.e.*, over a year after Defendant first questioned

Plaintiff's ownership of Parcel 12 -- Plaintiff contracted for a survey (the "2015

Survey") to "confirm and/or pinpoint the specific TMK parcel on which the crash

occurred."  Doc. No. 57-1, Decl. of Stephen M. Tannenbaum ("Tannenbaum

Decl.") ¶ 9.  In "mid-August 2015," Plaintiff received the results of the 2015

Survey which "revealed that the parcel of land on which the helicopter crashed

was *not* the parcel that the Plaintiff had to that point believed, [Parcel 13], the

crash having occurred just over the border of two adjoining TMK parcels."  *Id.*

¶ 10.  Instead, the helicopter crashed on Parcel 12.  *Id.* ¶ 11.  Plaintiff apparently

suspected he had an ownership interest in Parcel 12, but Plaintiff's counsel "had to

confirm that Plaintiff had good title" to Parcel 12 because "Parcel 12 has

5

splintered title and was subject to significant litigation over same." *Id.* ¶¶ 11-12.

After receiving the 2015 Survey, "counsel for Plaintiff had to confirm that

Plaintiff had good title to . . . the parcel that the survey identified as where the

helicopter went down." *Id.* ¶ 11.  Plaintiff asserts that he "confirmed title to Parcel

12" by Fall 2015.[1]   *Id.* ¶ 12.  Specifically, according to Plaintiff, he "and four

other co-tenant trusts each own[] 20% of Parcel 12." *Id.*

On February 4, 2016 -- well after Plaintiff confirmed title to Parcel 12

-- Plaintiff filed a Motion for Leave to Amend Complaint ("Motion to Amend").

Doc. No. 47.  Plaintiff's Motion to Amend seeks to:

> (1) identify[] the precise parcel of land on which the helicopter crash in issue occurred by Hawaii tax map key ("TMK") number; (2) stat[e] the two precise parcels of land (also by TMK number) that were damaged by the crash; and (3) stat[e] Plaintiff's ownership interests in relation thereto (specifically, that he is pursuing the claim on behalf of himself as to one parcel and on behalf of all joint co-tenants as to the other of the two parcels affected).

Doc. No. 59, Pl.'s Reply in Support of his Motion to Amend, at 2.

---

[1]   Plaintiff's proportional share of Parcel 12, if any, is disputed.  Plaintiff states that he owns 20% of Parcel 12 and that there are five co-tenants in total.  *See* Doc. No. 59-1, Tannenbaum Decl. ¶ 12.  By contrast, Defendant states that there are more than 200 co-tenants to Parcel 12, Doc. No. 54, Opp'n to Motion to Amend at 11, and "Plaintiff's name is not listed among the many owners of Parcel 12 identified on the County of Maui's Real Property Tax Division's website."  Doc. No. 54 at 9 n.3 (citing Doc. No. 54-3, which provides a March 3, 2016 printout of the owners of Parcel 12).

The following day, Plaintiff filed a Motion for Extension of Time to File Disclosure of Expert Reports Or, In the Alternative, To Reset Trial and Pretrial Deadlines ("Plaintiff's Motion to Extend Expert Witness Deadlines"). Doc. No. 49.  Plaintiff's Motion to Extend Expert Witness Deadlines seeks a ten-week extension of the February 8, 2016 deadline "based on the fact that it took until late this past summer to complete the survey of the crash site, to identify precisely which parcels of land were affected and how, as well as, to further identify debris and debris fields, since that time." *Id.*

The April 28 Order denied both the Motion to Amend and Plaintiff's Motion to Extend Expert Witness Deadlines.  Doc. No. 69.  With regard to the Motion to Amend, the April 28 Order reasoned:

> Plaintiff may sue Defendants for damage to the property, with or without the inclusion of his co-tenants, but may not recover more than his proportionate share of damages.  However, the Proposed Amended Complaint seeks to do more than that.  Plaintiff moves to add language that he will "adequately represent [his co-owners'] interests in their absence."  In his Motion [to Amend], Plaintiff clarifies that he is "pursuing the claim on behalf of all joint and co-tenants as to [Parcel 12]."  At the hearing on this Motion, Plaintiff's counsel stated that any damages recovered in this case will be distributed between the co-owners on a pro-rata basis.  Clearly, in moving to amend the Complaint as requested, Plaintiff is seeking to sue on behalf of his absent co-owners.

7

*Id.* at 7.  The April 28 Order concluded that "Plaintiff's attempt to add claims on behalf of his absent co-owners who own individual, separate, and distinct title to Parcel 12 is barred by the statute of limitations" because, in Hawaii, "[a]ctions for recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after." *Id.* at 8 (citing Haw. Rev. Stat. § 657-7 (Damage to persons or property)).  The April 28 Order explained:

> The helicopter crashed occurred on November 10, 2011. Media coverage of the crash was widespread.  Plaintiff, who was living in California, became aware of the crash within two days, by November 12th.  It is reasonable that the co-owners would have been aware of the crash on their land shortly after the accident, which occurred nearly 4.5 years ago.  Clearly, under any reasonable length of time for the co-owners to become aware of their claims, the claims would be time-barred. Consequently, the new claims for damage to property owned by Plaintiff's co-owners, whether brought by themselves or by Plaintiff on their behalf, are time-barred and futile.

*Id.* at 9.

In denying the Motion to Amend, the April 28 Order made clear that, "with respect to Parcel 12, Plaintiff may sue Defendants for damage to the property, with or without the inclusion of his co-tenants, but may not recover more than his proportionate share of damages." *Id*.  That is, assuming Plaintiff can

8

prove an ownership interest in Parcel 12, the April 28 Order reasoned that Plaintiff may seek injunctive relief as to the entirety of Parcel 12 and money damages as to Plaintiff's proportional share of Parcel 12.

As to Plaintiff's Motion to Extend Expert Witness Deadlines, the April 28 Order analyzed Federal Rule of Civil Procedure 16(b)(4), which provides that a scheduling order "may be modified only for good cause and with the judge's consent."  In determining whether "good cause" supported Plaintiff's Motion to Extend Expert Witness Deadlines, the April 28 Order "primarily consider[ed] the diligence of the party seeking the amendment."  *Id.* at 10 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).  The April 28 Order determined that "Plaintiff was not diligent in attempting to meet the original expert disclosure deadline of February 8, 2016" because:

> The accident occurred nearly 4.5 years ago, and Plaintiff commenced this action nearly 2.5 years ago. Before this lawsuit was filed, Plaintiff had obtained the NTSB Report, which identified the precise geographic coordinates of the accident site and the location of the debris trail relative to that site.  Also, on March 18, 2014, defense counsel provided Plaintiff a map plotting the reported latitude and longitude coordinates of the accident site in relation to Plaintiff's property and informed Plaintiff that "the accident site is located approximately 25 feet west northwest of the west-most boundary of [Plaintiff's] property (Parcel 13)."  The [Spring 2015] survey confirmed that the crash occurred on Parcel 12 and it is unclear why Plaintiff did not

schedule experts to view the crash site and debris field until the survey was completed.

Even assuming Plaintiff's experts could not view the crash site until the survey was finished in mid-August 2015, Plaintiff still had nearly six months until the February 8, 2016 expert deadline. Plaintiff could have scheduled experts to view the crash site while Plaintiff held discussions with co-owners of Parcel 12. However, none of Plaintiff's experts were (sic) scheduled to view the site until after the deadline had passed, and Plaintiff did not provide a single expert report before the February 8 deadline.

*Id.* at 10-11.

On June 7, 2016, Defendant deposed Plaintiff for a second time. *See* Doc. No. 115-3, Def.'s Ex. A (June 7, 2016 Suzuki Dep.). During the second deposition, Plaintiff admitted that he did not have a deed or title for Parcel 12. *Id.* at 41:1-3. According to Plaintiff, he paid for an ownership interest in Parcel 12 but he hasn't "transferred ownership yet." *Id.* at 41:1-14. Plaintiff asserted that he pays the taxes for Parcel 12, but he does not know if there is any government or state agency that identifies him as an owner of Parcel 12. *Id.* at 45:5-10. According to Plaintiff, "there's a piece of paper somewhere stating that [he] own[s] 21 percent" of Parcel 12, but he "don't know for sure" because "[i]t doesn't concern [him]." *Id.* at 48.

During a July 1, 2016 hearing on the motions, the parties agreed that

Plaintiff's original Complaint, Doc. No. 1, entitled Plaintiff to seek injunctive relief (*i.e.*, remediation) with regard to all of Parcels 12 and 13.  In addition, the parties agreed that, at a minimum, Plaintiff's original Complaint entitled Plaintiff to seek damages as to the entirety of Parcel 13 and as to Plaintiff's proportionate share (if any) of Parcel 12.  Thus, the Proposed Amended Complaint only adds a statement (or, as argued by Plaintiff, "clarifies") that Plaintiff also seeks damages on behalf of Parcel 12 co-tenants.

### III.  <u>STANDARDS OF REVIEW</u>

#### A.    **Plaintiff's Appeal**

Before turning to the merits of Plaintiff's Appeal, the court addresses the threshold issue of the proper standard for reviewing the April 28 Order. Plaintiff argues that the appropriate standard of review is de novo as to the portion of the April 28 Order denying Plaintiff's Motion to Amend but "clearly erroneous or contrary to law" as to the portion of the April 28 Order denying Plaintiff's Motion to Extend Expert Witness Deadlines.  Doc. No. 81, at 7.  Defendants argue that the appropriate standard of review for the entirety of the April 28 Order is "clearly erroneous or contrary to law."  Doc. No. 102, at 4.

A party may appeal a magistrate judge's determination of a pretrial nondispositive matter to the district court, and the district court may modify or set

aside any portion of the magistrate judge's order found to be "clearly erroneous or

contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); L.R.

74.1. As defined by Rule 72(a) of the Federal Rules of Civil Procedure, a

nondispositive matter is "a pretrial matter not dispositive of a party's claim or

defense." This extremely deferential standard requires the district judge to affirm

the magistrate judge "unless the court is left with the definite and firm conviction

that a mistake has been committed." *Hasegawa v. Hawaii*, 2011 WL 6258831, at

*1 (D. Haw. Dec. 14, 2011) (quotation marks omitted).

Plaintiff argues that "the April 28 Order denying amendment was

effectively a dispositive ruling" because it "purports to foreclose altogether

Plaintiff's ability to recover monetary damages for the majority of Parcel 12."

Doc. No. 81, at 6. The court disagrees. "A motion for leave to amend is a

nondispositive motion which a magistrate judge may properly decide." *Seto v.

Thielen*, 519 F. App'x 966, 969 (9th Cir. 2013). The April 28 Order's ruling on

Plaintiff's Motion to Amend was "not dispositive of any claim or defense of a

party." Fed. R. Civ. P. 72(a). Rather, the April 28 Order merely determined that

Plaintiff could not amend his Complaint, but allowed all of Plaintiff's substantive

claims outlined in his original Complaint to proceed. By denying Plaintiff leave to

file his Proposed Amended Complaint, the April 28 Order was not dispositive of

12

any of Plaintiff's claims or defenses. *Id.*

Accordingly, the entire April 28 Order was nondispositive. As such, the court applies the "clearly erroneous or contrary to law" standard to the entirety of Plaintiff's Appeal.[2] "The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Lovell v. United Airlines, Inc.*, 728 F. Supp. 2d 1096, 1100 (D. Haw. 2010) (quotation marks and citations omitted). "A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Na Pali Haweo Cmty. Ass'n v. Grande*, 252 F.R.D. 672, 674 (D. Haw. 2008) (quoting *Conant v. McCoffey*, 1998 WL 164946, at *2 (N.D. Cal. Mar. 16, 1998).

"A district court shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." LR 74.1. *See also Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002) ("A district judge may reconsider a magistrate's order in a pretrial matter if that order is 'clearly erroneous or contrary to law.'"). Additionally, the "district judge may also reconsider *sua sponte* any matter determined by a magistrate judge.

---

[2] As explained below, however, even if the court were to apply a de novo standard of review, the court would reach the same result.

*See* LR 74.1.  Toward that end, the district court may affirm the magistrate judge's

ultimate conclusion on a different basis.  *See United States v. Pope*, 686 F.3d

1078, 1080 (9th Cir. 2012) (affirming a district court decision after "[t]he district

court affirmed the magistrate court . . . but on slightly different grounds").

## B.    Motion to Strike

Federal Rule of Civil Procedure 26(a)(2)(A) mandates a party to

disclose the identity of any witness it may use at trial to present expert testimony.

Disclosure of an expert testimony involves submitting a report containing detailed

information.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Specifically:

> Unless otherwise stipulated or ordered by the court, this
> disclosure must be accompanied by a written report --
> prepared and signed by the witness -- if the witness is
> one retained or specially employed to provide expert
> testimony in the case or one whose duties as the party's
> employee regularly involve giving expert testimony.
> The report must contain:
>
> (i) a complete statement of all opinions the witness will
> express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming
> them;
> (iii) any exhibits that will be used to summarize or
> support them;
> (iv) the witness's qualifications, including a list of all
> publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous
> 4 years, the witness testified as an expert at trial or by
> deposition; and
> (vi) a statement of the compensation to be paid for the

14

study and testimony in the case.

*Id.*

Rule 26(a)(2)(D) requires a party to make the above "disclosures at

the times and in the sequence that the court orders."  Moreover, such disclosure

deadlines are "to be taken seriously."  *Janicki Logging Co. v. Mateer*, 42 F.3d 561,

566 (9th Cir. 1994).  "Timely and careful compliance with the requirements of

Rule 26(a) is essential, both as a matter of fairness to litigants and as a matter of

orderly procedure [particularly] during . . . events which occur in the final phases

of discovery, motion work and trial preparation."  *Garcia v. Qwest Corp.*, 2008

WL 4531657, at *2 (D. Ariz. Oct. 3, 2008) (quoting *Dixie Steel Erectors, Inc. v.

Grove U.S., L.L.C.*, 2005 WL 3558663, at *2 (W.D. Okla. Dec. 29, 2005)).  "The

purpose of the rule is to eliminate unfair surprise to the opposing party."  *See

Durham v. Cty. of Maui*, 2011 WL 2532423, at *7 (D. Haw. June 23, 2011)

(quotation and citation omitted).

Accordingly, Federal Rule of Civil Procedure 37(c)(1) "gives teeth to

these requirements by forbidding the use at trial of any information required to be

disclosed by Rule 26(a) that is not properly disclosed."  *Yeti by Molly, Ltd. v.

*Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).[3]  The Rule,

amended in 1993, "significantly broadened [the] duty to supplement Rule 26

disclosures by making mandatory preclusion 'the required sanction in the ordinary

case.'"  *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 19 (1st Cir. 2001)

(quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)).  The Advisory

Committee Notes to Rule 37(c)(1) describe the sanctions as "self-executing" and

"automatic."  *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37

Advisory Committee's Note (1993)).

　　　　"'Rule 37(c)(1) does not require a finding of bad faith or callous

disregard of the discovery rules' as a precondition before imposing sanctions."

*Garcia*, 2008 WL 4531657, at *3 (quoting *S. States Rack & Fixture, Inc. v.*

*Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (affirming district

---

[3]  Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a
> hearing, or at a trial, unless the failure was substantially justified or
> is harmless.  In addition to or instead of this sanction, the court, on
> motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses,
> > including attorney's fees, caused by the failure;
> > (B) may inform the jury of the party's failure; and
> > (C) may impose other appropriate sanctions, including any
> > of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

court's preclusion of supplemental opinion where plaintiff failed to timely disclose his expert's supplemental opinion)). *See also Yeti by Molly, Ltd.*, 259 F.3d at 1106 ("Thus, even though Deckers never violated an explicit court order to produce the Vuckovich report and even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).").

"The range of sanctions provided in Rule 37(c), from the most harsh (total exclusion and dismissal of the case) to more moderate (limited exclusion and attorney's fees), gives the district court leeway to best match the degree of non-compliance with the purpose of Rule 26's mandatory disclosure requirements." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001). *See also, e.g.*, *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 642 (D. Haw. 2008) ("The Ninth Circuit gives 'particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).'") (quoting *Yeti by Molly, Ltd.*, 259 F.3d at 1106).

"Two express exceptions ameliorate the harshness of Rule 37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless." *Yeti by Molly, Ltd.*, 259 F.3d at

1106.  The burden to prove substantial justification or harmlessness is on the party

facing sanctions.  *Id.* at 1107 (citing *Wilson*, 250 F.3d at 21).  "For purposes of

Rule 37(c)(1), a party's failure to disclose is substantially justified where the

non-moving party has a reasonable basis in law and fact, and where there exists a

genuine dispute concerning compliance."  *Garcia*, 2008 WL 4531657, at *3

(citations omitted).  "Failure to comply with the mandate of the Rule is harmless

when there is no prejudice to the party entitled to the disclosure."  *Id*.

## C.   Defendant's Motion to Extend Dispositive Motions Deadlines

A scheduling order may be modified for good cause and with the

judge's consent.  *See* Fed. R. Civ. P. 16(b)(4).  *See also Johnson*, 975 F.2d at 608

("Orders entered before the final pretrial conference may be modified upon a

showing of 'good cause' . . . .").  In evaluating "good cause," the court "primarily

considers the diligence of the party seeking the amendment."  *Id.* at 609.

## IV.  <u>DISCUSSION</u>

## A.   The April 28 Order Is Affirmed

The April 28 Order denied both the Motion to Amend and the Motion

to Extend Expert Witness Deadlines.  The court AFFIRMS the April 28 Order

with regard to both motions, although, as explained below, on different grounds as

to the Motion to Amend.

18

## 1. *The Motion to Amend*

The April 28 Order denied the Motion to Amend on futility grounds because "Plaintiff's attempt to add claims on behalf of his absent co-owners who own individual, separate, and distinct title to Parcel 12 is barred by the statute of limitations."  Doc. No. 69, April 28 Order at 8.  Plaintiff argues that the April 28 Order's "legal findings pertaining to the supposed expiration of the statute of limitations for those claims or some of those claims that Plaintiff had already brought in connection with Parcel 12" are incorrect.  Doc. No. 81, Appeal at 10. Specifically, Plaintiff argues that the Proposed Amended Complaint "did not actually add any new claims or parties."  *Id.* at 11.

The court agrees that Plaintiff's Proposed Amended Complaint neither adds new claims nor parties to this action.  Rather, Plaintiff's Proposed Amended Complaint "specified [the] TMK numbers of the parcels affected, Plaintiff's ownership of each, and that he is suing on Parcel 13 as sole owner and on Parcel 12 based on his undivided tenancy in common, but for damages and/or injunctive relief pertaining to the entire parcel."  *Id.  See also* Doc. No. 47-3, Proposed Am. Compl.  Although Plaintiff's Proposed Amended Complaint would dramatically change the scope of Plaintiff's lawsuit, it would do so by recasting the contours of *existing* claims and the responsibilities of an *existing* party

19

(Plaintiff).  *See* Doc. No. 47-3, Proposed Am. Compl.  The court finds that the April 28 Order's conclusion to the contrary was clear error.

Nevertheless, the court agrees with the April 28 Order's ultimate conclusion that the Motion to Amend should be denied, albeit on other grounds. *See Pope*, 686 F.3d at 1080.  *See also Shroff v. Spellman*, 604 F.3d 1179, 1187 n.4 (10th Cir. 2010) (explaining that the court can affirm a magistrate judge's decision "on any grounds for which there is a record sufficient to permit conclusions of law" even if those grounds were not relied upon by the magistrate judge); *Griffin v. Raytheon Co. Long Term Disability Plan No. 558*, 2005 WL 4891214, at *1 (N.D. Tex. Aug. 31, 2005) ("As in other appeals, the court may affirm a correct order of the magistrate judge on grounds that he did not cite or that were not raised by him.").

In light of the parties' agreement at the July 1, 2016 hearing, Plaintiff's Proposed Amended Complaint raises only one relevant issue -- whether Plaintiff can collect damages on behalf of the Parcel 12 co-tenants.  The court answers this question in the negative for two reasons.  First, Plaintiff's Proposed Amended Complaint is unduly delayed and would unfairly prejudice Defendant. In addition, the court finds that Plaintiff's Proposed Amended Complaint is futile.

>        a.    *Plaintiff's Proposed Amended Complaint is unduly delayed*
>              *and unfairly prejudices Defendant*[4]

As the April 28 Order recognized, a court "may deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and futility of amendment."  Doc. No. 69, April 28 Order at 4 (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d. 522, 532 (9th Cir. 2008)).  With regard to undue delay, the court considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  However, "[d]elay alone does not provide sufficient grounds for denying leave to amend" unless the opposing party suffers prejudice.  *See Hurn v. Ret. Fund Trust*, 648 F.2d 1252, 1254 (9th Cir. 1981).  The court considers undue delay and prejudice in turn.

>        i.    Undue delay

Plaintiff claims he did not "unduly delay[] seeking amendment as the [2015 Survey] disclosing the information to be added [was] completed in recent

---

[4] Although the April 28 Order did not rely on these grounds, they were fully briefed by the parties below.  *See, e.g.*, Doc. No. 54, Opp'n at 6-7 (arguing that Plaintiff's Motion to Amend is inexcusably delayed); Doc. No. 57, Reply at 11-13; Doc. No. 66, Supplemental Memo at 17-18; Doc. No. 68, Supplemental Memo in Opp'n at 8-10.

months." Doc. No. 47, Appeal at 5. Plaintiff's assertions completely misrepresent the history of the case and also demonstrate a poor understanding of the Federal Rules of Civil Procedure.

To be clear, Plaintiff should have determined whether he owned the property at issue before he filed the lawsuit on October 30, 2013. Under Rule 11(b)(3) of the Federal Rules of Civil Procedure, a party filing a complaint certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Plaintiff's Complaint baldly asserts that "[t]he Crash occurred on land owned by Plaintiff." Doc. No. 1, Compl. ¶ 10.[5] And the Complaint nowhere indicates that this factual contention requires "further investigation or discovery" in order to have "evidentiary support." *See* Fed. R. Civ. P. 11(b)(3). Accordingly, when Plaintiff's counsel filed the Complaint he certified that he already determined this factual contention had evidentiary support after conducting "an

---

[5] The court recognizes that this Complaint was drafted by Plaintiff's prior counsel. That said, Plaintiff's current counsel made no effort to correct the Complaint for approximately 10 months.

inquiry reasonable under the circumstances." *Id.*

But by the time Plaintiff's counsel filed the Complaint, any reasonable inquiry under the circumstances would have resolved the question of where the crash occurred. This is especially true because the NTSB Report was both publically-available and it identified the exact coordinates of the crash. *See* Doc. No. 102-3 ("According to the NTSB, the accident site is located at N°21 04.050' by W156° 50.578' (as reported at p. 3 of the NTSB Immersive Witness Interview Report)."). Further, Plaintiff's lawyer obviously reviewed the NTSB Report prior to filing the Complaint. *See* Doc. No. 1, Compl. ¶¶ 20-26 (citing the NTSB Report).

Given the foregoing, it seems evident that Plaintiff "knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d at 1388. That is, in light of the evidence available to Plaintiff -- specifically, the NTSB Report that Plaintiff utilized when filing his Complaint -- Plaintiff should have known whether the crash occurred on Parcel 12, Parcel 13, or both when he filed the Complaint on October 30, 2013. *See* Doc. No. 1, Compl. Yet Plaintiff waited until February 4, 2016 to file a Motion to Amend, Doc. No. 47 (*i.e.*, well over two years after Plaintiff filed his Complaint). By any reasonable measure, this constituted undue delay. *See Jackson*, 902 F.2d

23

at 1388 (holding that it was unreasonable to delay filing an amended complaint eight months after obtaining the pertinent facts).  *See also Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1990), *abrogated on other grounds by Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001) (affirming a district court's denial of a plaintiff's leave to amend brought more than a year after the filing of her complaint due to the "timing of the motion" which was "after the parties had conducted discovery").

The gravity of Plaintiff's delay is made all the more serious by the fact that, on March 18, 2014 -- *i.e.*, several months after Plaintiff filed his Complaint -- Defendant alerted Plaintiff's counsel to the possibility that, based on the NTSB Report and the "public record hosted by the County of Maui Real Property Tax Division . . . it appears that neither the accident site nor the debris field are located on land owned by [Plaintiff]."  *See* Doc. No. 102-3.  Put differently, even though Plaintiff should have known about this issue at the time of filing the Complaint, the record establishes that Plaintiff's counsel indisputably had actual knowledge of this issue by March 18, 2014.  And yet Plaintiff waited nearly two years *after* Defendant alerted Plaintiff to this issue to file an Amended Complaint.  This, in and of itself, constitutes undue delay.  *See Jackson*, 902 F.2d at 1388.

But, making matters even worse, Plaintiff waited approximately 5.5 months after his 2015 Survey "revealed that the parcel of land on which the helicopter of land on which the helicopter crashed was *not* the parcel that Plaintiff had to that point believed" to file his Motion to Amend.  Doc. No. 57-1, Tannenbaum Decl. ¶ 10.

In short, Plaintiff knew or should have known the facts underlying his Motion to Amend at the time of filing his Complaint, but Plaintiff chose not to file a Motion to Amend for over two years.  That is undue delay.  *See Jackson*, 902 F.2d at 1388.  And Plaintiff's belated Motion to Amend is especially egregious in light of the fact that (1) Defendant alerted Plaintiff's counsel to the issue underlying Plaintiff's Motion to Amend nearly two years before Plaintiff filed the Motion to Amend, and (2) Plaintiff chose to sit on the results of the 2015 Survey for approximately 5.5 months before filing the Motion to Amend.  Accordingly, the court finds that Plaintiff's Motion to Amend was a clear example of "undue delay."  *Id.*

ii.    Undue prejudice

Plaintiff's Motion to Amend also subjects Defendant to undue prejudice.  Plaintiff's Appeal relies heavily on *Arizona Dream Act Coalition v. Brewer*, 2013 WL 4872107, at *1 (D. Ariz. Sept. 12, 2013) (citing 6 C. Wright, A.

Miller, et al., *Federal Practice & Procedure* § 1487 (2d ed. 1990)), which outlines various ways of evaluating undue prejudice. This reliance is mistaken -- *Brewer* actually highlights some of the many ways that Plaintiff's Motion to Amend, if granted, would unfairly prejudice Defendant. Specifically, Plaintiff's Proposed Amended Complaint seeks to represent unknown -- both in terms of name and number -- co-tenants to this litigation, thereby creating substantial uncertainty and requiring the Defendant "to engage in significant new preparation." *Id*. Further, because Plaintiff's Proposed Amended Complaint seeks to collect damages on behalf of Parcel 12 co-tenants, Plaintiff's Proposed Amended Complaint greatly expands Defendant's potential liability and makes it likely that Defendant will suffer "added expense and the burden of a more complicated and lengthy trial." *Id.* For all these reasons, Plaintiff's belated Motion to Amend would prejudice the Defendant if granted.

In light of the foregoing, the court AFFIRMS the April 28 Order's conclusion that the Motion to Amend should be denied on the grounds that the Motion to Amend was unduly delayed and that it unfairly prejudices the Defendant.

b.     *Plaintiff's Proposed Amended Complaint is futile*

The court also rejects the Motion to Amend on the additional ground

that Plaintiff's Proposed Amended Complaint is futile.  *See* LR 74.1.  Specifically,

Plaintiff's Proposed Amended Complaint seeks to sue on behalf of a disputed

number of unnamed Parcel 12 co-tenants.  Whether the court views this as a

substantive or procedural issue, the court finds that any such amendment would be

futile.

To the extent that Plaintiff's Proposed Amended Complaint raises a

substantive question regarding Hawaii state property law, the court recognizes that

"the extent for recovery for property damage to an entire parcel of land by a tenant

in common or co-owner has not been decided" in Hawaii state courts.  Doc. No.

81, Appeal at 16.  Nonetheless, the court believes that the Hawaii Supreme Court

would apply the majority rule to this situation.  That is, an individual tenant in

common "may generally sue alone" for injunctive relief but, "in actions against

outsiders for money damages to the cotenancy . . . joinder of all cotenants as

plaintiffs is usually required." 7 Powell on Real Property § 50.06[1] (Michael

Allen Wolf ed., LexisNexis Matthew Bender).  *See also* 86 C.J.S. Tenancy in

Common[6] § 165 ("Tenants in common may bring a joint action for damages to the common property."); 86 C.J.S. Tenancy in Common § 167 (2016) ("In actions for damages with respect to the common property, one tenant in common may recover his or her proportionate share of the damages to the whole property, but it is usually held that one may not recover more than his or her share of the damages."); *Cahaba Forests, LLC v. Hay*, 927 F. Supp. 2d 1273, 1285 (M.D. Ala. 2013) ("Fewer than all the tenants in common may sue for injury to property, 'provided that their recovery is limited to a proportionate share of the total damage.'") (quoting *Abrams v. Ciba Specialty Chems. Corp.*, 663 F. Supp. 2d. 1259, 1270 (S.D. Ala. 2009)); *Caprer v. Nussbaum*, 36 A.D.3d 176, 184, 825 N.Y.S.2d 55, 64 (2006) ("The rights of a tenant-in-common do not extend, however, to suing individually for damages to the common interest."); *Nemet v. Boston Water & Sewer Comm'n*, 56 Mass. App. Ct. 104, 112-13, 775 N.E.2d 750, 757 (2002); *Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp.*, 152 Vt. 16, 22-23, 565 A.2d 238, 242 (1989) ("Where monetary damages are involved, a tenant in common, acting alone, may recovery only his or her fractional share."); *Onorato v. Wissahickson Park, Inc.*, 430 Pa. 416, 422, 244 A.2d 22, 25 (1968);

---

[6] The Hawaii Supreme Court has cited Corpus Juris Secundum, Tenancy in Common, as persuasive authority. *See, e.g., Lambert v. Waha*, 2016 WL 2928916, at *10 n.11 (Haw. May 17, 2016).

*Hicks v. Sw. Settlement & Dev. Ctr.*, 188 S.W.2d 915, 921 (Tex. Civ. App. 1945);

*Guth v. Texas Co.*, 64 F. Supp. 733, 734 (N.D. Ill.), *reversed on other grounds*,

155 F.2d 563 (7th Cir. 1946).

To the extent Plaintiff's Proposed Amended Complaint raises a

procedural issue, Plaintiff's proposed representation of the Parcel 12 co-tenants is

futile under Rule 17 of the Federal Rules of Civil Procedure.  Rule 17 provides

that "[a]n action *must* be prosecuted in the name of the real party in interest"

except when a party falls into one of the following seven categories:

> (A) an executor;
> (B) an administrator;
> (C) a guardian;
> (D) a bailee;
> (E) a trustee of an express trust;
> (F) a party with whom or in whose name a
> contract has been made for another's
> benefit; and
> (G) a party authorized by statute.

Fed. R. Civ. P. 17(a)(1)(A)-(G).  Here, Plaintiff does not fit any of the above seven

categories with regard to the Parcel 12 co-tenants; although Plaintiff has indicated

he intends to act as a trustee on behalf of the Parcel 12 co-tenants, this is very

different from Plaintiff being an actual trustee of an express trust with regard to

the Parcel 12 co-tenants.  *See* Fed. R. Civ. P. 17(a)(1)(E).  And, as previously

discussed, it is this court's view that the Hawaii Supreme Court would not provide

29

Plaintiff with additional grounds for seeking substantive relief on behalf of the Parcel 12 co-tenants.  *See* C. Wright and A. Miller, *Federal Practice & Procedure* § 1544, p. 484 (2010) (explaining that "[t]o determine whether the requirement that the action be brought by the real part in interest has been satisfied, the court must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief"); *Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) ("Whether American is the real party in interest under Fed. R. Civ. P. 17(a) in this federal diversity suit is dependant upon whether American is a proper party to maintain this action under applicable state law.").  As such, Plaintiff may not sue in his name on behalf of the Parcel 12 co-tenants.[7]

Plaintiff's original Complaint already entitles Plaintiff to seek damages in relation to Parcel 12 as to his proportionate ownership interest.  To be clear, if Plaintiff prevails on the claims in his original Complaint, he will be entitled to obtain injunctive relief for the entirety of Parcels 12 and 13 as well as damages for Parcel 13 and Plaintiff's proportional share of damages for Parcel 12

---

[7]  Further, to the extent that Plaintiff could potentially bring this action as a class action, Plaintiff also fails to affirmatively demonstrate his compliance with Rule 23.  *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (explaining that Rule 23 provides an exception to the "usual rule that litigation is conducted by and on behalf of the individual named parties only" but "a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23") (citations and internal quotation marks omitted).

(whatever his proportional share may be). But given the majority rule that a co-tenant cannot recover damages on behalf of another co-tenant, Plaintiff's Proposed Amended Complaint adds nothing substantive to the original Complaint -- amendment would be futile.

### 2. *Plaintiff's Motion to Extend Expert Witness Deadlines*

The April 28 Order denied Plaintiff's Motion to Extend Expert Witness Deadlines, finding that "Plaintiff was not diligent in attempting to meet the original expert disclosure deadline of February 8, 2016." Doc. No. 69, April 28 Order at 10. Plaintiff argues he "timely moved (before February 8, 2016) and offered a plausible reason for his delay in procuring and disclosing his expert's reports," and that this "should have been enough for the Magistrate [Judge] to have found 'good cause.'" Doc. No. 81, Appeal at 20. The court disagrees.

The April 28 Order correctly recognized that Plaintiff's Motion to Extend is governed by Rule 16(b)(4) of the Federal Rules of Civil Procedure. Doc. No. 69, April 28 Order at 10. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." As the April 28 Order explained, the good cause standard "primarily considers the diligence of the party seeking the amendment." *Id.* (quoting *Johnson*, 975 F.2d at 608). And, "if the party seeking the modification was not diligent, the court should deny the

motion." *Id.* (citing *Jackson*, 2012 WL 2190815, at *1).  The April 28 Order correctly applied the "good cause" standard and denied Plaintiff's Motion to Extend Expert Witness Deadlines on the ground that Plaintiff was not diligent. *Id.* Accordingly, the April 28 Order was not contrary to law.

Moreover, none of Plaintiff's various arguments regarding the April 28 Order demonstrate that the Magistrate Judge committed "clear error" as to the facts.  Plaintiff argues that his Motion to Extend Expert Witness Deadlines was "reasonable" for various reasons, Doc. No. 81, Appeal at 20-23, but reasonable minds can disagree; Plaintiff fails to affirmatively identify any factual finding in the April 28 Order which rises to the level of "clear error."

In any event, Plaintiff's arguments are not persuasive.  The vast majority of Plaintiff's points of error hinge on the mistaken presumption that it was "reasonable" for Plaintiff to wait until Spring 2015 to begin the process of confirming the location of the land at issue in this lawsuit.  Specifically, Plaintiff argues that "he obtained new information" about Parcel 12 and "[t]his, by itself, should have been enough for the Magistrate [Judge] to have found 'good cause.'" Doc. No. 81, Appeal at 20.  This "new" information appears to be Plaintiff's alleged ownership interest in Parcel 12.  *Id.*  For example, Plaintiff argues that "[t]he discovery of and need to coordinate with the other joint owners of the

property on which the fuel, debris and other contamination was primarily located

explained why it was not possible to comply with the original expert deadlines."

*Id.* But, as the April 28 Order correctly states, Plaintiff should have known about

this "new" information well in advance of the February 8, 2016 deadline.[8]  Doc.

No. 69, April 28 Order at 10-11.  It was not clear error for the April 28 Order to

find that Plaintiff was not diligent given that Plaintiff still had "nearly six months

until the February 8, 2015 expert deadline" after the 2015 Survey was completed.

*See* Doc. No. 69, April 28 Order at 11 (finding that "it is unclear why Plaintiff did

not schedule experts to view the crash site and debris field until the survey was

completed").  *See also id.* (citing *Johnson*, 975 F.2d at 609 ("If that party was not

diligent, the inquiry should end.")).

　　　　Relatedly, Plaintiff also claims that "he was diligent in attempting to

'herd' and unify all of the Parcel 12 co-owners and to try to obtain a consensus,

which they were requiring in order to act."  Doc. No. 111, Reply at 16.  *See also*

Doc. No. 81, Appeal at 21-22.  This argument is beside the point given that each

---

[8]  As both this Order and the April 28 Order explain, Plaintiff should have known the location of the crash before he filed the Complaint on October 30, 2013.  And as explained both here and in the April 28 Order, Plaintiff should have conducted this basic diligence before filing his Complaint, especially in light of the fact that "[b]efore this lawsuit was filed, Plaintiff had obtained the NTSB Report, which identified the precise geographic coordinates of the accident site and the location of the debris trail relative to that site."  Doc. No. 69, April 28 Order at 10-11.

co-tenant has the right to full use of the co-tenancy's property, as well as the right

to bring actions to protect the co-tenancy's realty.  *See* Powell at §§ 50.03 &

50.06.  As such, Plaintiff's failure to timely produce expert reports cannot be

reasonably attributed to the Parcel 12 co-tenants, and it was not "clear error" or

"contrary to law" for the April 28 Order to hold Plaintiff responsible for his

delays.

Plaintiff argues that the April 28 Order "overlooked" his counsel's

declaration detailing Plaintiff's reasons attempting to justify his delay.  Doc. No.

81, Appeal at 22.  Plaintiff is wrong.  The April 28 Order repeatedly referenced the

declaration.  *See* Doc. No. 69 at 2, 3, 5, 7, 9.  The fact that the April 28 Order

disagreed with Plaintiff's various excuses is neither "clear error" nor "contrary to

law."

Plaintiff also argues that his delay was "reasonable" because of his

change of counsel.  Doc. No. 81, Appeal at 20.  But Plaintiff's reliance on

*Himmelfarb v. JP Morgan Chase Bank Nat. Ass'n*, 2011 WL 4498975, at *3 (D.

Haw. Sept. 26, 2011), is misplaced.  In *Himmelfarb*, the court found it

"reasonable" to grant new counsel three months to seek leave to file a

counterclaim.  *Id.*  Here, Plaintiff's current counsel entered their appearance on

April 30, 2015, Doc. No. 44, and Plaintiff did not file his Motion to Extend Expert

Witness Deadlines until approximately ten months later.  *See* Doc. No. 49 (filed on February 5, 2016).  Put differently, Plaintiff's counsel took more than three times as long as *Himmelfarb* deemed reasonable.  As such, it was hardly "clear error" for the April 28 Order to find that Plaintiff was not diligent.[9]

## B.     Defendant's Motion to Strike Is Granted in Part and Denied in Part

Also before the court is Defendant's Motion to Strike.  Doc. No. 80. Defendant seeks to preclude Plaintiff from using the following individuals in any capacity: (1) Randall Bell, (2) Jan Medusky and/or Edward Becker of Medusky & Co.; (3) Cheney-Ann Pulama Lima; (4) William Hunter and/or Scott Adamowski of NRC Environmental Services, Inc.; and (5) Jason Grant of Ninyo & Moore Geotechnical Environmental Sciences Consultants (the "Challenged Expert Witnesses").  Doc. No. 80, Motion to Strike at 2.  In addition, Defendant seeks to strike Grant as an expert rebuttal witness.  Finally, Defendant requests attorneys' fees and costs for their Motion to Strike.  *Id.*

---

[9]  The court acknowledges that the April 28 Order was "plainly incorrect" in finding that "Plaintiff did not provide a single expert report before the February 8 deadline."  *See* Doc. No. 81, Appeal at 23.  Plaintiff points out that he actually submitted three reports before the deadline: (1) Arden Torcauto, Doc. No. 48-1, Ex. 1, (2) Denise Nakanishi, Doc. No. 48-3, Ex. 3, and (3) William S. Rice, Doc. No. 50-1.  *Id.* at 24.  But even setting aside the quoted portion of that sentence of the April 28 Order, this mistake does not rise to the level of "clear error."  That is, the court does not have a "definite and firm conviction that a mistake has been committed" with regard to the April 28 Order's denial of Plaintiff's Motion to Extend Expert Witness Deadlines. *See United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).  The April 28 Order denied Plaintiff's Motion to Extend Expert Witness Deadlines on numerous other valid grounds, which the court affirms.  *See* Doc. No. 69, April 28 Order at 11.

In response, Plaintiff asks the court to reverse the April 28 Order. Doc. No. 103, Opposition at 3.  If the court denies this request, however, Plaintiff argues that (1) Grant should nonetheless be allowed because his expert rebuttal report and disclosures were made before the expert rebuttal witness deadline, and (2) Plaintiff's proposed expert witnesses "nonetheless be allowed to give *lay* testimony pertaining to their first-hand perceptions that are <u>not</u> dependent on their specialized knowledge, skill, training or education and are not dependent on any technical or scientific information falling beyond the understanding of the trier of fact." *Id.* at 3-4.

The court GRANTS Defendant's request to strike Challenged Expert Witnesses as expert witnesses for Plaintiff.  However, Plaintiff may use Grant as a rebuttal expert witness, and the court DENIES Defendant's request that the court preclude Plaintiff from using his proposed expert witnesses as premature.  Finally, the request for attorneys' fees and costs associated with the Motion to Strike is DENIED.

///

///

///

///

### 1. *Plaintiff's Belated Disclosures Are Sanctionable*

Plaintiff has utterly failed to comply with the court's scheduling order as to the Challenged Expert Witnesses.[10]  That is, as to these witnesses, Plaintiff failed to make the Rule 26 expert witness disclosures before the February 8, 2016 deadline.  Specifically, Plaintiff had not even disclosed the identities of Becker, Lima, Adamowski and Grant, let alone their substantive reports by the deadline; although Plaintiff timely disclosed the identities of Bell, Hunter, and Medusky, he failed to accompany these disclosures with substantive reports as required by Rule 26(a)(2)(B).  *See* Doc. Nos. 48, 50.  *See also* Fed. R. Civ. P. 26(a)(2)(B) (requiring the disclosure of an expert witness to be "accompanied" by a detailed written report).  Plaintiff says the "reason for his delay in procuring and disclosing his expert's reports" is that "he obtained new information about the impacted parcel owned jointly by himself and others, and then determined that it was necessary to investigate ownership and consult with the other owners before he could seek to begin the process of having various persons inspect, excavate and take samples at [Parcel 12]."  Doc. No. 81, Appeal at 20.

For the reasons discussed at length above, Plaintiff's delay is not

---

[10]  To be clear, this court's order required Plaintiff to disclose "the identity and written report" of any proposed expert witnesses by February 8, 2016.  Doc. No. 38.

"substantially justified."  *See* Fed. R. Civ. P. 37(c)(1).  It's not even close --

Plaintiff knew or should have known about his property interest before filing the

lawsuit and certainly no later than March 18, 2014, when Defendant alerted

Plaintiff to the possibility that he did not own Parcel 12.  As the April 28 Order

found, there is no good reason why Plaintiff failed to contract for a survey of

Parcel 12 until Spring 2015; as a co-tenant, Plaintiff had the right of full access to

the land, and Plaintiff had no obligation to receive "permission" from the Parcel

12 co-tenants with regard to the expert disclosures for this case.[11]  But, in any

event, Plaintiff received the 2015 Survey results over 5.5 months -- *i.e.*, in "mid-

August" 2015, 57-1,Tannenbaum Decl., ¶ 9 -- before the February 8, 2016

deadline, and offers no compelling reason why he could not make this deadline.

Given these facts, Plaintiff has failed to prove that his delay in disclosing the

Challenged Expert Witnesses was substantially justified.  *Yeti by Molly, Ltd.*, 259

F.3d at 1106.  *See also Garcia*, 2008 WL 4531657, at *3.

>        Nor was Plaintiff's delay harmless.  Had Plaintiff disclosed his expert

witnesses "at the times and in the sequence that the court order[ed]," Fed. R. Civ.

---

[11]  At a minimum, Plaintiff could have scheduled expert witnesses so that they would be ready to visit Parcel 12 as soon as he finished consulting with his Parcel 12 co-tenants.  Plaintiff admits this process finished in January 2016, Doc. No. 81, Appeal at 22, yet Becker did not even visit Parcel 12 until April 19, 2016.  *See* Doc. No. 103, Opposition at 26 (citing Doc. No. 79-1 at 3).  Plaintiff describes Becker as a local appraiser who is "highly flexible with availability."  Doc. No. 81, Appeal at 26.

P. 26(a)(2)(D), Defendant could have hired the appropriate expert witnesses to

effectively engage the Challenged Expert Witnesses.  Specifically, as Defendant

argues:

> By failing to make a timely production of the damages
> assessments and theories developed by his Expert
> Witnesses, Plaintiff deprived [Defendant] of the ability
> to properly vet and respond to Plaintiff's damages
> theories.  With trial scheduled on August 9, 2016,
> [Defendant] has no reasonable opportunity to conduct
> discovery, retain expert witnesses to review or rebut the
> Expert Witnesses' late-disclosed written reports, or file
> dispositive motions.

Doc. No. 80, Motion to Strike at 16.  Plaintiff's arguments to the contrary are

unpersuasive.  Plaintiff claims that his delay caused Defendant "no prejudice or

surprise," Doc. No. 103, Opposition at 8, but this is not plausible where, as here,

Plaintiff not only failed to produce a substantive report for any of the Challenged

Expert Witnesses before the deadline, but Plaintiff also failed to even disclose the

identity of Becker, Lima, Adamowski and Grant until after the deadline.  *See, e.g.*,

*Yeti by Molly, Ltd.*, 259 F.3d at 1106; *Garcia*, 2008 WL 4531657, at *3.

Because Plaintiff failed to meet his burden of proving that his

untimely disclosures with regard to the Challenged Expert Witnesses were either

substantially justified or harmless, sanctions under Rule 37(c)(1) are warranted.

Toward that end, the court will not allow Plaintiff to use the Challenged Expert

Witnesses as experts.[12]  *See Kajitani v. Downey Sav. & Loan Ass'n*, 2008 WL 2751232, at *2 (D. Haw. July 15, 2008) ("The Court can only allow [late] testimony if Plaintiffs' untimely disclosure was either substantially justified or harmless.").  These sanctions are appropriate in light of Plaintiff's total failure to timely disclose the Expert Witnesses as required by Rule 26.  *See Ortiz-Lopez*, 248 F.3d at 34.  *See also Lindner*, 249 F.R.D. at 642 ("The Ninth Circuit gives 'particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).'") (quoting *Yeti by Molly, Ltd.*, 259 F.3d at 1106).

---

[12]  In seeking to avoid this sanction with regard to at least Bell and Becker, Plaintiff's Appeal misleadingly claims that Rule 26(a)(2)(D), which outlines the time to disclose expert testimony, "simply states that the disclosures must be made per Court order or, otherwise, at least 90 days before trial."  Doc. No. 81, Appeal at 19.  Plaintiff continues: "In our case, trial is set for August 9, 2016.  Plaintiff, therefore, with his filings and the service on May 10, 2016 of the last two reports of Dr. Bell and Mr. Becker[] have at least met this 90-day pre-trial deadline."  *Id.*  Plaintiff's argument appears to be premised on a seemingly deliberate distortion of Rule 26(a)(2)(D).

The Federal Rules of Civil Procedure provide that: "A party must make these [expert testimony] disclosures at the times and in the sequence that the court orders.  Absent a stipulation or a court order, the disclosures must be made . . . at least 90 days before the date set for trial or for the case to be ready for trial."  Fed. R. Civ. P. 26(a)(2)(D)(i).  That is, the 90-day provision is irrelevant where, as here, there is a stipulation or court order.  *See* Doc. No. 38.

Plaintiff can hardly claim ignorance of the court's scheduling order in this case.  Indeed, a portion of Plaintiff's Appeal is dedicated to the April 28 Order's denial of Plaintiff's Motion to Extend Expert Deadlines.  *See* Doc. No. 81.  And given the straightforward nature of Rule 26(a)(2)(D), Plaintiff's suggestion that the 90-day provision has any applicability appears to be willfully misleading, and the court flatly rejects it.

### 2.    *Plaintiff May Use Grant As a Rebuttal Witness*

Notwithstanding the foregoing, the court finds that Plaintiff properly disclosed Grant as a rebuttal expert witness.  Specifically, Plaintiff timely disclosed Grant for the purpose of "rebutting some of the statements and conclusions in Mr. Randall's March 8, 2016 Report, related to, among other things, the unreliability of Defendant's prior testing and errors communicated to the State."  Doc. No. 64 at 3.  *See also* Doc. No. 38, First Amended Scheduling Order at 3.  Defendant complains that Plaintiff offered Grant's belated expert report in support of this disclosure, Doc. No. 61, but it is unclear why this matters -- Grant's expert report, which was filed on March 18, 2016, Doc. No. 61, was timely for the purpose of rebuttal witness disclosures.  *See* Doc. No. 38, First Amended Scheduling Order at 2.  As such, Plaintiff may use Grant and his expert report for the limited purpose of rebutting or contradicting Randall's testimony or expert report.  *See* Doc. No. 38, First Amended Scheduling Order at 2 (providing that a rebuttal witness can be used "solely to contradict or rebut the evidence of a witness identified by another party").

### 3.    *Plaintiff May Seek to Use the Expert Witnesses As Lay Witnesses*

The court denies Defendant's request to strike the Expert Witnesses as lay witnesses without prejudice on the grounds that this determination is

premature.  But, to be clear, if the Challenged Expert Witnesses are offered as lay witnesses, they will be strictly limited to providing testimony that is permitted under the Federal Rules of Evidence.  For example, a lay witness may only offer opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  Regardless, the court will consider objections, if any, to the Challenged Expert Witnesses testifying in a non-expert capacity at trial.

### 4.  *Defendant's Request for Attorneys' Fees and Costs Is Denied*

Finally, the court denies Defendant's request for attorneys' fees and costs with regard to this Motion.  The court may have been more receptive to this request had Defendant not filed its Motion to Extend Dispositive Motions Deadline which, for reasons discussed below, the court views as borderline frivolous.  Given these circumstances, the court will not award Defendant attorneys' fees and costs with regard to Defendant's Motion to Strike.

## C.   Defendant's Motion to Extend Dispositive Motions Deadline is Denied

The final motion before the court is Defendant's Motion to Extend Dispositive Motions Deadline.  Doc. No. 115.  Defendant argues that "good

cause" exists to extend the dispositive motions deadline by several months because Defendant "made numerous and repeated requests that Plaintiff produce documents evidencing his interest in Parcel 12." Doc. No. 115, Def.'s Motion to Extend Dispositive Motions Deadline at 8. Defendant says that it wasn't until June 7, 2016, during Plaintiff's second deposition -- well after the March 9, 2016 deadline for dispositive motions, Doc. No. 38 -- that "Plaintiff admitted that he does not hold title to the Crash Site." Doc. No. 115, Def.'s Motion to Extend Dispositive Motions Deadline at 9. Defendant argues it was diligent because it "filed the present Motion . . . within just nine days of Plaintiff's admission that he does not have standing to pursue alleged damages to the Crash Site." *Id.* at 8.

The court sees no reason why Defendant needed to wait until Plaintiff's second deposition to file a motion for summary judgment regarding Plaintiff's ownership interest in Parcel 12. The record establishes that Plaintiff's statements during his second deposition were hardly a surprise to Defendant. Indeed, Defendant's own March 18, 2014 letter makes clear that Defendant has long-known the exact coordinates of the accident site (based on the NTSB Report) and argued that "neither the accident site nor the debris field are located on land owned by [Plaintiff]. *See* Doc. No. 102-3. This evidence alone would have been enough for Defendant to file a plausible summary judgment motion, and

43

Defendant has possessed this evidence for over two years.  Moreover, as early as March 2, 2016 -- *i.e.*, before the dispositive motions deadline -- Defendant also knew that the public record did not list Plaintiff as one of the owners of Parcel 12.  *See* Doc. No. 54-3 (3/2/16 printout of the public record hosted by the County of Maui Real Property Tax Division providing the names of Parcel 12 owners which do not include Plaintiff).

Based on these facts, the court finds that Defendant could have moved for summary judgment well before the deadline for filing dispositive motions.  As such, Defendant has failed to demonstrate good cause for waiting until Plaintiff's disclosures in his second deposition.  Accordingly, the court DENIES Defendant's Motion to Extend Dispositive Motions Deadline.

///

///

///

///

///

///

///

///

44

# V.  **CONCLUSION**

For the foregoing reasons, the court (1) AFFIRMS the April 28 Order,

Doc. No. 69; (2) GRANTS in part and DENIES in part the Motion to Strike, Doc.

No. 80; and (3) DENIES Defendant's Motion to Extend, Doc. No. 115.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 8, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Suzuki v. Helicopter Consultants of Maui, Inc.*, Civ. No. 13-00575 JMS/KJM, Order: (1) Affirming the April 28 Order, Doc. No. 69; (2) Granting in Part and Denying in Part Defendant's Motion to Strike, Doc. No. 80; and (3) Denying Defendant's Motion to Extend the Dispositive Motions Deadline, Doc. No. 115