IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VERNON SUZUKI,<br><br>                Plaintiff,<br><br>    vs.<br><br>HELICOPTER CONSULTANTS OF MAUI, INC., a Hawaii Corporation, doing business as BLUE HAWAIIAN HELICOPTERS; ET AL.,<br><br>                Defendants. | Civ. No. 13-00575 JMS-KJM<br><br>AMENDED ORDER DENYING PLAINTIFF'S MOTION IN LIMINE NO. 9 AS TO THE FEBRUARY 7, 2012 "NO FURTHER ACTION" LETTER, ECF NO. 172 |

**AMENDED ORDER DENYING PLAINTIFF'S MOTION IN LIMINE NO. 9 AS TO THE FEBRUARY 7, 2012 "NO FURTHER ACTION" LETTER, ECF NO. 172[1]**

**I. INTRODUCTION**

On November 20, 2011, a helicopter crashed on the Island of Molokai, killing five people, and destroying the helicopter. Plaintiff Vernon Suzuki ("Plaintiff") brought this suit seeking damages and injunctive relief alleging that Defendant Helicopter Consultants of Maui, Inc. ("Defendant") failed

---

[1] This Order amends the court's October 25, 2016 Order, ECF No. 289, by clarifying a reference to the record of a January 16, 2012 letter report, discussed below.

1

to remediate the crash site properly.  ECF No. 1.  Trial is set to begin on November 1, 2016.

In his Motion in Limine No. 9, Plaintiff seeks to "preclude evidence or argument regarding Defendant's receipt of a 'no further action' letter dated February 7, 2012 from the State of Hawaii, Department of Health."  ECF No. 172.  The court heard the matter on October 18, 2016, after considering memoranda in support and opposition, as well as substantial supplemental briefing.  *See* ECF Nos. 172, 203, 227, 232, 248, 250.

Based on the following, the Motion is DENIED.  The February 7, 2012 "no further action" letter ("the Letter") is admissible under Federal Rules of Evidence 803(8)(A)(iii) & (B), and thus the court will allow evidence or argument regarding its receipt by Defendant.  By this ruling, however, the court is not precluding Plaintiff from challenging, if appropriate, the basis of the Letter or its meaning and effect, if any, on the issues in this case.

## II.  BACKGROUND

The Letter, issued by the State of Hawaii, Department of Health's ("DOH") Hazard Evaluation and Emergency Response Office ("HEER"), was addressed to Hawaii International Environmental Services, Inc. ("HIES") on behalf of Defendant.  ECF No. 203-2.  The Letter begins with the conclusion that:

> [The HEER] has reviewed the *Letter Report: Soil Sampling Activities, Blue Hawaiian Helicopter Impact location, Molokai, Hawaii*, dated January 16, 2012. Based on our review of the subject document, [the DOH] has determined that No Further Action is required at this site.

ECF No. 203-2, Def.'s Ex. A at PageID 3897.  In substance, the Letter provides:

> According to the [January 16, 2012] report, soil samples collected at the site showed residual contamination including polynuclear aromatic hydrocarbons (PAHs) detected at maximum concentrations of 0.9 mg/kg (below State Unrestricted Environmental Action Levels (EALs)) and total petroleum hydrocarbons (TPHs) detected at maximum concentrations of 700 mg/kg (above State Unrestricted EALs of 500 mg/kg for TPHs).  The TPH exceedence is not significant considering the small amount of fuel released and the absence of grossly impacted soil at the site.  This information indicates that the residual contaminants do not pose a significant hazard risk to human health or the environment and, therefore, the NFA determination criteria have been satisfied.

*Id.* It cautions:  "Please be aware that should new information concerning on-site contamination become available, the HEER Office will reevaluate the site to determine if a response action is appropriate." *Id.* at PageID 3898.

By its terms, the Letter's conclusions are based on a January 16, 2012 "letter report" from HIES directed to Mr. John Lacy (a former counsel for Defendant) that begins:

> This letter report documents activities related to the collection of soil samples from the soils associated with

> the known impact location of a November 10, 2011, Blue Hawaiian helicopter crash, located within TMK 5-6-006-013-0000, on the island of Molokai, Hawai'i[.]

ECF No. 248-2, Def.'s Ex. A at PageID 4679. It explains:

> The purpose of this project was to collect and evaluate soil samples for the presence of Jet-A fuel which was released at the Site as a result of a helicopter crash in early November, 2011. Reportedly, there were approximately 60 gallons of fuel on board the helicopter at the time of impact. The impact produced a large fire at the Site, which likely consumed a majority of the fuel.

*Id.* It follows with a description of "soil sampling activities," and "soil sample analytical results," along with attached data from Environmental Services Network Pacific Inc. ("ESN") for the presence of certain "polynuclear aromatic hydrocarbons." *Id.* at PageID 4680-81, 4687. The letter report concludes:

> At this time, we recommend requesting a No Further Action [NFA] approval from the DOH based on the conditions at the Site. It is feasible to remove the top few inches of soil from the impact area if the DOH does not concur with our recommendation for no further action. Based on site conditions, removal of approximately five cubic yards of soil would likely be sufficient to lower the concentrations to well below the DOH action level, after which additional soil sampling would be necessary to confirm the remaining soils at the Site were below EALs for diesel.

*Id.* at PageID 4682.[2]

---

[2] The record also contains a slightly different version of the January 16, 2012 "letter report," reading as follows:

The record establishes that, in issuing the Letter, HEER officials reviewed (1) the January 16, 2012 letter report (and attached data from ESN); (2) a National Transportation Safety Board "preliminary aviation report," ECF No. 248-2 at PageID 4690; and (3) a document entitled "Site Assessment -- Island of Molokai," ECF No. 248-3, which provided information regarding (a) drinking water wells near the crash site and (b) rare and endangered species, and population estimates, within four miles of the site, *id.* at PageID 4694. *See* ECF No. 248-2 at PageID 4673, Gabrielle F. Grange Aff. ¶¶ 4-5 (verifying that HEER received and reviewed these documents).

This information was sufficient for HEER "to form an opinion on whether the site at issue required further action." Grange Aff. ¶ 7. The "sampling and analysis of soil and simplified reporting provided to [HEER] in the documents submitted were adequate to make a regulatory decision[.]" *Id.* ¶ 13. "The soil evaluation for the November 10, 2011 crash was performed in accordance with

---

> At this time, we recommend requesting a No Further Action [NFA] approval from the DOH based on the conditions at the Site. The NFA letter may be issued after the DOH reviews site specific assessment activities and determines there is no threat to humans and/or the environment based on the current concentrations of Jet-A resulting from the November 2011 helicopter impact.

ECF No. 203-4, Def.'s Exh. C at PageID 3910. HEER, however, reviewed the version quoted above at ECF No. 248-2, Def.'s Ex. A at PageID 4682. *See* ECF No. 248-2, Gabrielle F. Grange Aff. ¶ 4.

[DOH] regulatory guidelines." ECF No. 227-3 at PageID 4353, William S. Randall Aff. ¶ 2. And Defendant has established that the criteria for evaluating whether the DOH should issue a "no further action" letter are set forth in Hawaii Administrative Rules ("HAR") § 11-451-10 (entitled "Criteria for No Further Action"). HAR Chapter 11-451, Subchapter 3 (HAR §§ 11-451-8 to -16), concerns "Hazardous Substance Response." Those rules were promulgated to implement Hawaii's Environmental Response Law, Haw. Rev. Stat. Chapter 128D. *See* HAR § 11-451-1(a) ("The objective of these rules is to establish the Hawaii state contingency plan in order to implement, administer, and enforce chapter 128D, Hawaii Revised Statutes[.]").

### III. DISCUSSION

Given the preceding background facts, the Letter is relevant and admissible under Federal Rules of Evidence 401 and 803(8).

Rule 803 provides in pertinent part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> . . . .
> (8) Public Records. A record or statement of a public office if:
>
> (A) it sets out:
>
> . . .
> (iii) in a civil case . . . factual findings from a legally authorized investigation; and

6

> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Under this Rule, the court considers two elements for the present Motion: (1) whether the Letter constitutes a "public record," and (2) the Letter's "trustworthiness."

**A.   Public Record**

The Letter is plainly a "record or statement of a public office" that constitutes "factual findings from a legally authorized investigation" under Rule 803(8)(A)(iii).  The DOH (and HEER specifically) is a public office or agency. The DOH is agency of the State of Hawaii, and the purpose of HEER "is to protect human health and the environment."  Grange Aff. ¶ 1.  HEER "provides support and partnership in preventing, planning for, responding to, and enforcing environmental laws relating to releases or threats of releases of hazardous substances."  *Id.*  And the Letter includes "factual findings from a legally authorized investigation" for purposes of Rule 803(8)(A)(iii).  For example, HEER's conclusion that -- based on available information -- "the residual contaminants do not pose a significant hazard risk to human health or the environment and, therefore, the NFA determination criteria have been satisfied," ECF No. 203-2 at PageId 2897, is a factual finding of a government agency.  *See*

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162 (1988) (holding that "factually based conclusions or opinions are not on that account excluded from the scope of [the former] Rule 803(8)(C)"). The Letter contains no legal conclusions that might otherwise be excludable. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010) (holding that "[p]ure legal conclusions are not admissible as factual findings" for purposes of Rule 803(8)(C), and excluding a Department of Labor conclusion that the employer was a covered "employer").

**B.     Trustworthiness**

Plaintiff has also not established that "the source of the information or other circumstances indicate a lack of trustworthiness" under Rule 803(8)(B). *See Beech Aircraft*, 488 U.S. at 167 ("[A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof . . . that she determines to be untrustworthy."). That is, Plaintiff has not met his burden to demonstrate that the Letter, or the circumstances under which it was obtained, are untrustworthy. *See Sullivan*, 623 F.3d at 778 ("A party opposing the introduction of a public record bears the burden of coming forward with enough negative factors to persuade a court that a report should not be admitted.") (quoting *Johnson v. City of Pleasanton,* 982 F.2d 350, 352 (9th Cir. 1992)).

HEER has explained the precise basis for its conclusions, and such data was available for Plaintiff to review. Although Plaintiff has raised questions

about soil sampling done by HIES, *see, e.g.*, ECF No. 172-6, the court is certainly not convinced (as Plaintiff argues) that "the entire process, from the start, has all the markings of a travesty of cronyism and special treatment" or a "virtual hijacking of the DOH"s process." ECF No. 172-1, Pl.'s Mem. at PageID 3213. Nothing suggests that facts were misrepresented, or that HEER and HEIS were violating published rules regarding improper contacts in the regulatory process.

Plaintiff argues that Defendant and HIES (1) did not fully include him, as the purported land owner, in the process of obtaining the Letter; and (2) failed to provide complete information to HEER such as:

> the rare historical *heiau* situated near the crash site, the flow of water from the crash site down onto those archeological ruins, the flow of water across parcels, the local community outrage, my neighbors' drinking water wells, my plans to sink a well for drinking water, the gross contamination of the soil that HIES never mentioned, certain other contaminants that should have been tested for but were not, and other considerations that I feel the DOH should have known and needed to know before making its determination that nothing needed to be done.

Doc. No. 250-1, Suzuki Decl. ¶ 9. But in this context, these types of arguments -- such as whether HEER neglected to consider certain information, or focused too narrowly on only "polynuclear aromatic hydrocarbons" in jet fuel, in issuing the Letter -- are factors that might question the *weight* or *scope* of the Letter's conclusions, but do not undermine their essential reliability. That is, Plaintiff has

9

not demonstrated a lack of trustworthiness when considering factors such as a lack of timeliness, the investigator's skills or experience, the lack of a required hearing, or potential bias. *See, e.g.*, *Beech Aircraft*, 488 U.S. at 167 n.11 (setting forth a nonexclusive list of these four factors that are relevant in addressing trustworthiness). And "it goes without saying that the admission of a report containing 'conclusions' is subject to the ultimate safeguard -- the opponent's right to present evidence tending to contradict or diminish the weight of those conclusions." *Id.* at 168.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion in Limine No. 9 is DENIED. To be clear, the court is not precluding Plaintiff from challenging the Letter's contents or conclusions, nor its meaning or effect, if any, on the issues in this case. The court is simply denying Plaintiff's request to preclude Defendant

///

///

///

///

///

///

///

from "introducing, relying upon or mentioning [the Letter] in any way."  ECF No. 172-1 at PageID 3214.

    IT IS SO ORDERED.

    DATED:  Honolulu, Hawaii, October 26, 2016.



    /s/ J. Michael Seabright
    J. Michael Seabright
    Chief United States District Judge

*Suzuki v. Helicopter Consultants of Maui, Inc., et al.*, Civ. No. 13-00575 JMS-KJM, Order Denying Plaintiff's Motion in Limine No. 9 as to the February 7, 2012 "No Further Action" Letter, ECF No. 172